**ROAN CREQUE, Plaintiff**

**v.**

**ELMO D. ROEBUCK, President of the Twelfth Legislature of the Virgin Islands and THE TWELFTH LEGISLATURE OF THE VIRGIN ISLANDS, Defendants**

Civil No. 655/1978

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

March 19, 1979

199

ROAN CREQUE, St. Thomas, V.I., *pro se*

MICHAEL C. MARDEN, ESQ., Legislature of the Virgin Islands, St. Thomas, V.I., *for defendants*

FEUERZEIG, *Judge*

### MEMORANDUM OPINION AND ORDER

█ This cause is before the court on the defendants' motion to dismiss, alleging that the complaint fails to state a claim upon which relief can be granted and that the court lacks jurisdiction over the subject matter of the action. In addition, defendant Elmo D. Roebuck has moved for a dismissal of the action against him, contending that he is not personally liable to the plaintiff. Attached to the motion to dismiss are five exhibits and an affidavit of counsel. Accordingly, the court construes the motion as one for summary judgment. 5 V.I.C. App. I, R. 12(b); 5 V.I.C. App. IV, R. 7; 4 V.I.C. § 83 (1977 Supp.).[1]

---

[1] On December 7, 1978, this court gave plaintiff fifteen days to submit any opposition he might have to defendants' motion to dismiss. Plaintiff filed nothing until well after the time for responding had expired. Accordingly, the facts as they appear from defendants' exhibits are taken as true.

## FACTS

## I

Plaintiff, in his complaint, alleges that the parties entered into a contract of employment for a fixed period of time, but that he prematurely was "wrongfully and illegally terminated". The contract states that the agreement is between the Twelfth Legislature of the Virgin Islands, acting by and through its President and Mr. Roan Creque. The relevant section of the contract is:

4. *Termination:* The employment of Creque hereunder may be terminated by either party giving to the other fifteen (15) days' notice in writing.[2]

The contract is signed by the plaintiff and Elmo D. Roebuck, as President of the Twelfth Legislature.

Sen. Roger Hill apparently informed the plaintiff by letter dated April 18, 1978, that Section 4 of the contract was being invoked and that the plaintiff's employment was being terminated.[3] In response, plaintiff wrote Sen. Hill a letter, also dated April 18, 1978, that concluded:

Please be aware that I would like to be relieved of my duties effective immediately.[4]

On May 18, 1978, the plaintiff wrote to Senate President Elmo D. Roebuck, acknowledging that he had written a termination letter to Sen. Hill. He stated, however, that until he received a notice of his termination from Sen. Roebuck, he still would consider himself "to be on the payroll" and would continue to work "as usual".[5] On May 22, 1978, plaintiff again wrote Sen. Roebuck:

---

[2] Defendants' Attachment A.
[3] See defendants' Attachment B. Sen. Hill's letter of April 18, 1978, has not been made a part of defendants' motion, and is not now before the court.
[4] Defendants' Attachment B.
[5] Defendants' Attachment C.

I would like to formally appeal to you and the Twelfth Legislature to permit me to continue the work I have started on behalf of the Twelfth Legislature.[6]

On June 20, 1978, the Rules Committee met and the following appears in its report.

After disucssion [sic] Senator Bryant moved that Creque's letter dated April 18, 1978 asking that he be releived [sic] of his duties be accepted. This was seconded by Senator Williams with no objections.[7]

## LAW

## I

■■ Defendant Roebuck's motion to dismiss will be granted. The contract was between the plaintiff and the Legislature. Sen. Roebuck, in signing the document, was acting in his capacity as President of the Legislature. See Virgin Islands Legislative Manual, Rule I § 10 at 4, and Rule VII § 1(i) at 12. As such, he was an agent acting for a disclosed principal and no personal liability on the contract attached to him. Restatement (Second) of Agency § 320 and § 328 (1958).[8]

## II

The defendant Legislature argues that this court lacks jurisdiction over the subject matter of the action, contending that under the separation of powers doctrine it is a co-equal branch of government and that the court may not interfere with its internal operations. The Legislature, however, appears to confuse the concept of subject matter jurisdiction with the doctrine of justiciability. In two landmark cases, Baker v. Carr, 369 U.S. 186 (1962), and

[6] Defendants' Attachment D.
[7] Defendants' Attachment E.
[8] The rules of the common law, as expressed in the restatements of law approved by the American Law Institute, are the rules of decision in the courts of the Virgin Islands in the absence of local laws to the contrary. 1 V.I.C. § 4. See also Varlack v. S.W.C. Caribbean, 13 V.I. 666, 550 F.2d 171 (3d Cir. 1977); but see Murray v. Beloit Power Systems, Inc., 450 F.Supp. 1145.

Powell v. McCormack, 395 U.S. 486 (1969), the U.S. Supreme Court enunciated the differences between the two concepts. See also Powell v. McCormack, 395 F.2d 577, 587–599 (D.C. Cir. 1968) (Burger, Circuit Judge).[9]

■ Preliminarily, it is clear that this court has subject matter jurisdiction over the instant action. Pursuant to Section 23 of the Revised Organic Act, prec. 1 V.I.C., 48 U.S.C.A. § 1613 (1978 Supp.), this court has original concurrent jurisdiction of all actions that may be conferred on it by law. Title 4 V.I.C. § 76(a) (1977 Supp.) gives this court jurisdiction "in all civil actions" in which the amount in controversy does not exceed $50,000. This being a civil action for less than $50,000, a fortiori this court has subject matter jurisdiction.[10]

■ It is with respect to the question of this action's justiciability that the separation of powers doctrine comes into play. As the Court noted in Powell, two determinations must be made before a court will exercise its powers over another branch of government. First, the claim presented and the relief sought must be of a type that is capable of judicial resolution. Second, the issue must not raise a political question that the court is precluded from deciding because of the separation of powers that is provided by the

---

[9] The Legislature's mixing of the two issues certainly is not without precedent. The District Court for the District of Columbia in Powell v. McCormack, 266 F.Supp. 354 (D.D.C. 1967), granted the defendant's motion to dismiss former Congressman Adam Clayton Powell's complaint "for want of jurisdiction of the subject matter". The U.S. Supreme Court held that the court did, in fact, have subject matter jurisdiction, and that the action did not present a nonjusticiable political question. Id. 395 U.S. 486. The Legislature, having raised the issue of separation of powers, requires the court to address the issue of justiciability.

[10] In Baker v. Carr, supra, and Powell v. McCormack, supra, the Supreme Court held that for a federal court to have jurisdiction the action must be one that arises under the Constitution, laws, treaties or other enumerated categories of Article III of the U.S. Constitution; that it must be a "case of controversy" within the meaning of Article III, and that the cause must be one over which there has been a grant of jurisdiction by Congress. See also Powell, supra, 395 F.2d at 587–591 (Burger, J.). Similarly, the action here must and does meet the jurisdictional criteria of the Revised Organic Act and the Territorial Court Act, 4 V.I.C. § 71 et seq. (1977 Supp.).

U.S. Constitution or, in this case, by the 1954 Revised Organic Act. See 395 U.S. at 516–17. The primary distinction between subject matter jurisdiction and justiciability is: Can the court act, versus should the court act? See Powell, supra, 395 F.2d at 587–591.

■ Thus, the first inquiry to be made is whether this case is capable of judicial resolution. Here, the plaintiff alleges a breach of contract. This is the type of claim that courts are called on daily to decide. The duty allegedly owed can be identified and, if there is a breach, it readily can be determined. The question of relief is no more difficult. If the evidence warrants such a conclusion, this court can declare that the plaintiff is entitled to damages. See 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction, § 3529, at 162–63 (1975). Whether the plaintiff may get execution on that judgment is another matter. See id.; cf. Concepcion v. Cruz Soto, 12 V.I. 200, 519 F.2d 405 (3d Cir. 1975).

■ The second prong of the justiciability test relates to the separation of powers issue and the political question doctrine. Political questions are not justiciable. In Baker v. Carr, supra, Mr. Justice Brennan listed six factors that were "prominent on the surface" of a political question case. 369 U.S. at 217.[11] Only two merit brief consideration: Whether resolution of this dispute has been "constitution-

---

[11] As restated by then Circuit Judge Burger in Powell, supra, 395 F.2d at 593, the six factors are:

[1] a textually demonstrable constitutional commitment of the issue to a coordinate political department;

[2] or a lack of judicially discoverable and manageable standards for resolving it;

[3] or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion;

[4] or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government;

[5] or an unusual need for unquestioning adherence to a political decision already made;

[6] or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

ally" committed to the Legislature and whether a ruling by this court would reflect a lack of respect for the Legislature.

■■ This clearly is not a case where there is "a textually demonstrable constitutional commitment [of this subject] to another branch of government." Pursuant to Section 5(a) of the 1954 Revised Organic Act of the Virgin Islands, prec. 1 V.I.C., 48 U.S.C.A. § 1571(a) (1978 Supp.), the legislative power of the territory is vested in the Legislature. This power and authority extends to all rightful subjects of legislation. Id. Section 8(a), 48 U.S.C.A. § 1574(a); see Virgo Corp. v. Paiewonsky, 6 V.I. 256, 384 F.2d 569 (3d Cir. 1967), cert. den., 390 U.S. 1041, reh. den., 392 U.S. 917 (1968).

■■■ To prevail on this ground, the Legislature would have to show that the resolution of all disputes arising from contracts with legislative personnel is an exercise of legislative authority that is vested exclusively in the Legislature. This argument lacks even colorable merit. No provision of the Revised Organic Act designates the Legislature as the final arbiter of its contract disputes. On the contrary, Section 21 of the Revised Organic Act, 48 U.S.C.A. § 1611 (1978 Supp.), delegates the judicial power of the territory to the district court and other courts created by law. No citation to authority is needed for the proposition that the judicial power encompasses the authority to hear and determine contract disputes, but if there were any doubt, Section 2(b) of the Revised Organic Act of 1954, prec. 1 V.I.C., 48 U.S.C.A. § 1541(b) (1978 Supp.), clearly dispels it. That section provides that the Government of the Virgin Islands shall have the right to sue and be sued "in cases arising out of contract". See Felix v. Government of the Virgin Islands, 3 V.I. 399, 167 F.Supp. 702 (D.V.I. 1958) (Maris, J.). This court is unwilling to read Section 2(b) as applying only to contracts entered into by

the executive branch and not the legislative or the judicial branches. This is particularly so in the absence of any allegation or evidence that funds for the contract were not appropriated by the Legislature and approved by the governor.[12]

■ As stated, the only other political question factor that warrants consideration is whether judicial resolution of this case is impossible without expressing lack of respect for a co-equal branch of the Government—the Legislature. The courts of this territory daily hear and determine breach of contract actions against the Government without encroaching on the executive power. No reason is apparent why a similar action against the Legislature would thus encroach on the Legislature's power or show any disrespect for that body. Consequently, the court does not believe that hearing this action will impermissibly require a judicial resolution of a political question or violate the separation of powers doctrine. Accordingly, the court concludes that it has jurisdiction over the subject matter and that the instant action is justiciable.[13]

---

[12] This court knows of no contract entered into on behalf of the Virgin Islands Government by an agency or department of the executive branch that has been deemed to be enforceable unless the contract is authorized by law or is under an appropriation adequate to its fulfillment. In fact, if the contract is not authorized by law or there is not a sufficient appropriation, the contract is null and void. Sargeant v. Government, 10 V.I. 245 (D.V.I. 1973). However, assuming as it must that the Legislature acted lawfully in entering the contract with Roan Creque, Markoe v. Legislature, 15 V.I. 3 (D.V.I. 1978), aff'd, 592 F.2d 188 (1979), the court concludes that although the contract is in the name of the Legislature, as opposed to the Government, it is on no different footing than any other Government contract.

[13] The Legislature's reliance on Bishop v. Wood, 426 U.S. 341 (1976), is misplaced. In that action Mr. Bishop claimed that dismissal from his job violated his due process rights under the Fourteenth Amendment because his employment status gave him a protected property interest and because the grounds given for his dismissal deprived him of his liberty interest. The Court, however, held that he was denied neither a property nor a liberty interest under the Fourteenth Amendment. The Legislature relies on the Court's language that:

"In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due

## III

Defendants also move to dismiss the complaint on the grounds that plaintiff's complaint fails to state a claim upon which relief can be granted.[14] Defendants here appear to be contending that the plaintiff, by his letter of April 18, 1978, quit his job, and, therefore, has no basis for attacking the termination of the contract.

■ The court is not in a position to enter summary judgment in defendant's favor on the present state of the record. Too many issues of material fact remain in contention. First, the court does not have before it Sen. Hill's April 18, 1978, letter. This could be important in interpreting plaintiff's letter of the same date. The court also does not know by what authority, if any, Sen. Hill was acting when he wrote his letter of April 18.

More importantly, the court does not know what, if anything, Sen. Roebuck did or said between April 18 and

---

Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions."

Id. 426 U.S. at 350. This passage relates to the involvement of federal courts in personnel disputes involving state agencies and presumably to the alleged deprivation of Mr. Bishop's liberty interests. Nothing in Bishop, however, suggests that this court lacks jurisdiction to hear a claim for breach of contract in accordance with this court's concurrent jurisdiction over civil disputes not in excess of $50,000. 4 V.I.C. § 76(a) (1977 Supp.).

In view of the defendants' reliance on Bishop, the court also believes it is important to state that the Legislature is correct in asserting that plaintiff's claim cannot be read as alleging an unconstitutional denial of liberty as discussed in Bishop. Plaintiff alleges that he was "wrongfully and illegally terminated." There is no allegation in the complaint suggesting that the defendants were motivated by a desire to violate or penalize the plaintiff's constitutionally protected rights. Bishop v. Wood, supra, 426 U.S. at 350. Even given the liberal philosophy of notice pleading under Rule 8 of the Federal Rules of Civil Procedure, see, e.g., Conley v. Gibson, 355 U.S. 41 (1957), this court cannot conclude that plaintiff's complaint is founded on a constitutional deprivation of rights. "In pleading a violation of constitutional rights, plaintiff should specify how he has been injured, since vague allegations that he has been denied his rights have been held not to state a claim under Rule 8(a)" of the Federal Rules of Civil Procedure. 5 Wright and Miller, Federal Practice and Procedure: Civil, § 1234, at 184 (1969).

[14] As pointed out supra, the court construes the motion as one for summary judgment under Rule 56 in that it is supported by matters outside the pleadings. Rule 12(b) of the Federal Rules of Civil Procedure. 5 V.I.C. App. I, Rs. 12 and 56.

June 20 when the Rules Committee took its action. This could be relevant in terms of the knowledge or intent that could be imputed to the defendant Legislature as well as the reasonableness of any action that the plaintiff may have taken. Nor does the court know what Mr. Creque did during this period. It would appear highly unreasonable for the plaintiff to have continued working if Sen. Roebuck had notified him of termination. On the other hand, if plaintiff received no notification from Sen. Roebuck, such action may have been well-founded. Moreover, defendant has not addressed the issue of the relevance, if any, of the Legislative Manual to this action. While this may be a question of law, the court is reluctant to so conclude without some evidence as to its force and effect and application to the instant case.

■ Finally, the court notes that the plaintiff is proceeding pro se. This court has previously ruled that pro se litigants are to be accorded substantial justice despite any defects in the pleadings. Richardson v. Richardson, 14 V.I. 292 (Terr. Ct. 1978). This holding is in accord with the philosophy of the Federal Rules that favors the resolution of cases on their merits and not by summary judgment. See, e.g., Associated Press v. United States, 326 U.S. 1 (1945);[15] 10 Wright & Miller, Federal Practice and Procedure: Civil, § 2712, at 387 (1973). Accordingly, the Legislature's motion to dismiss will be denied. In so ruling, this decision should not be construed as indicating any opinion on the merits either of plaintiff's claim or the Legislature's defense.

---

[15] "We agree that Rule 56 should be cautiously invoked to the end that parties may always be afforded a trial where there is a bona fide dispute of facts between them." 326 U.S. at 6.